U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2012 MAY 16 PM 3:56

CLERK
BY ___PM___
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| JEREMY PEATMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 5:10-cv-307 |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER DECLINING TO ADOPT MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION AND GRANTING PLAINTIFF'S
MOTION TO REVERSE AND REMAND FOR FURTHER PROCEEDINGS**
(Docs. 13, 16 & 19)

This matter came before the court on the Objection of Plaintiff Jeremy M. Peatman (Doc. 20) to the Magistrate Judge's Report and Recommendation (the "R & R") filed on November 21, 2011 (Doc. 19). In the R & R, the Magistrate Judge recommended denying Plaintiff's motion to reverse the decision of Michael J. Astrue, Commissioner of Social Security (the "Commissioner") (Doc. 13) and granting the Commissioner's motion to affirm the same (Doc. 16).

Plaintiff objects to the R & R, contending that the Magistrate Judge erred (1) in determining that the Administrative Law Judge ("ALJ") adequately considered Plaintiff's migraine headaches; (2) in finding that substantial evidence supported the ALJ's mental residual functional capacity ("RFC") determination; (3) in recommending that the court affirm the ALJ's credibility determination pertaining to Plaintiff; and (4) in finding it harmless error that the ALJ's hypothetical posed to the vocational expert failed to include all of Plaintiff's limitations found by the ALJ.

Plaintiff is represented by Raymond J. Kelly, Esq. The Commissioner is represented by Special AUSA Karen Burzycki.

I.   **Factual and Procedural Background.**

The parties do not dispute the Magistrate Judge's recitation of the operative facts. The court thus adopts them verbatim:

> Peatman was twenty-five years old on the alleged disability onset date of February 1, 2008.[1] (AR 41, 156, 163.) He completed high school, and has one year of training as an automobile mechanic. (AR 25, 39, 197.) He has worked in the auto-repair industry as a service technician and a parts manager, and also has experience working on an assembly line and cleaning condominiums. (AR 192, 213-18.)
>
> On October 22, 2000, Peatman sustained severe head injuries from an automobile accident in which he was a backseat passenger. (AR 25-26.) His hospital course included treatment for respiratory distress, decreased mental status, and seizure activity. (AR 280, 300, 305-09.) He made "excellent gains" during his rehabilitation stay, and was discharged on November 21, 2000, able to ambulate independently and complete activities of daily living with cueing. (AR 351-52.) Peatman's discharge diagnoses were traumatic brain injury, left mandible fracture, and alcohol abuse. (AR 352.) Despite the severity of his injuries, in 2003, Peatman was able to complete a course in automobile repair; and in 2005, he was working 50-55 hours weekly as a mechanic. (AR 197, 287.) Thereafter, Peatman reported suffering multiple additional head injuries, including in November 2005, March 2006, May 2006, and October 2009, respectively. (AR 33, 240-41, 243, 287, 409.)
>
> In July 2008, Peatman protectively filed applications for supplemental security income ("SSI") and disability insurance benefits ("DIB"). (AR 156-64, 187, 191.) In his DIB application, Peatman alleged that, starting on October 22, 2000, the date of the above-described automobile accident, he became unable to work as a result of "head injury" and "chronic headach[e]," which caused him to lose focus and tire easily, have difficulty learning tasks and counting, be unable to stand for more than two-to-three hours, and be unable to bend over without having back pain. (AR 191.) At the administrative hearing, Peatman further alleged that, since approximately 2007, he has suffered almost daily headaches which adversely affect his ability to concentrate, his memory, and his mood

---

[1] In his written application, Peatman set forth an alleged disability onset date of October 22, 2000. (AR 39, 163.) At the administrative hearing, however, he changed the date to February 1, 2008, citing his pre-2008 income levels and the fact that he did not stop working until February 2008. (AR 40-41.)

2

(AR 25-26,47); and his most significant problem is his inability to concentrate, which has become progressively worse since 2000 (AR 43).

(Doc. 19 at 1-3.)

On May 11, 2010, ALJ Paul Martin conducted a hearing by videoconference on Plaintiff's application. Plaintiff appeared, testified, and was represented by a non-attorney representative. Plaintiff's mother and girlfriend also testified, as did vocational expert ("VE") Ralph Richardson. On May 28, 2010, the ALJ issued a decision finding that Plaintiff was not disabled under the Social Security Act. Thereafter, the Decision Review Board affirmed the ALJ's decision, making it final. Having exhausted his administrative remedies, Plaintiff filed the Complaint in this action on December 16, 2010.

## II. The ALJ's Decision.

The ALJ applied the five-step analysis employed by the Commissioner to determine whether a claimant is disabled under the Social Security Act.[2] At step one, the

---

[2] The five-step analysis is conducted as follows:

> The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires him to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if the impairment meets or equals a listed impairment. *Ferraris v. Heckler,* 728 F.2d 582, 584 (2d Cir. 1984).
>
> If the claimant is not presumptively disabled, the fourth step requires the ALJ to consider whether the claimant's [residual functional capacity] precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The fifth and final step requires the ALJ to determine whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts[v. Barnhart],* 388 F.3d [377,] 383 [2d Cir. 2004], and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue,* 566 F.3d 303, 306 (2d Cir. 2009)[.]

ALJ found that Plaintiff "has not engaged in substantial gainful activity since October 22, 2000, the alleged onset date" (AR 9), although the record reveals some earnings by Plaintiff in most years through January 2008.

At step two, the ALJ found that Plaintiff had the severe impairments of "residuals from traumatic brain injury and subsequent head traumas." (AR 10.) The ALJ found "the state disability determination service evaluation of 'nonsevere' inconsistent with the more recent medical statements from [Plaintiff's] treating physicians." (AR 13). Although the ALJ repeatedly referred to Plaintiff's headaches as evidence of these "residuals," he did not mention the 2009 report from consulting neurologist Waqar Waheed, MD in his analysis.

At step three, the ALJ determined that none of Plaintiff's impairments or combination of impairments met or medically equaled an impairment in the Listings. This determination included a conclusion that Plaintiff's impairments did not meet the "paragraph B" criteria because Plaintiff did not have at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social function; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.

At step four, the ALJ determined Plaintiff's RFC, finding that Plaintiff

> has the residual functional capacity to perform a full range of work at all exertional levels except that he could perform job tasks that would not involve complex written or verbal communications. Further, the claimant would be able to understand, remember and carryout moderately complex four to five step tasks which do not involve multi-tasking and he would also be able to occasionally interact with coworkers and the public, the latter involving only superficial interaction.

(AR 11.)

At step five of his analysis, the ALJ concluded that Plaintiff is unable to perform any past relevant work, which included working "as an automobile mechanic and an automobile parts department manager." (AR 13.) However, the ALJ determined that

---

*Zokaitis v. Astrue*, 2010 WL 5140576, at *5-6 (D. Vt. Oct. 28, 2010).

4

there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, including cleaner or landscape laborer. The ALJ based this finding on the testimony of the impartial VE. The ALJ's hypothetical to the VE, however, did not include Plaintiff's "moderate difficulties" in "concentration, persistence or pace" which the ALJ had found. (AR 10.)

With regard to Plaintiff's credibility, the ALJ found that "based upon the limited objective medical evidence underlying his allegations, his years of successful functioning following the original brain injury, his activities of daily living and his limited follow-through with treatment, I am obliged to find the severity of his impairments overstated." (AR 12.)

Based on the preceding analysis, the ALJ concluded that Plaintiff was not disabled "from October 22, 2000, through the date of this decision" in May 2010. (AR 14.)

## III.  Analysis and Conclusions of Law.

In the R & R, the Magistrate Judge recommended that the court affirm the decision of the ALJ. Plaintiff contends that the Magistrate Judge erred in a number of respects, each of which bears at least some relationship to the ALJ's failure to analyze the 2009 Waheed report. Plaintiff's objections are examined in full below.

### A.  Standard of Review.

A district judge must make a *de novo* determination of those portions of a magistrate judge's report and recommendation to which an objection is made. Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1); *Cullen v. United States*, 194 F.3d 401, 405 (2d Cir. 1999). The district judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *accord Cullen*, 194 F.3d at 405. A district judge, however, is not required to review the factual or legal conclusions of the magistrate judge as to those portions of a report and recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

In reviewing the Commissioner's decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence

supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002); *see* 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Even if a court could draw different conclusions after an independent review of the record, the court must uphold the Commissioner's decision when it is supported by substantial evidence and when the proper legal principles have been applied. *See* 42 U.S.C. § 405(g).

It is the Commissioner that resolves evidentiary conflicts and determines credibility issues, and the court may not substitute its own judgment for the Commissioner's. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998); *Aponte v. Sec'y of HHS*, 728 F.2d 588, 591 (2d Cir. 1984). Nevertheless, if the "evidence has not been properly evaluated because of an erroneous view of the law . . . the determination of the [Commissioner] will not be upheld." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

**B.   Whether the ALJ Adequately Considered Plaintiff's Migraine Headaches and Whether the Failure to Mention the 2009 Waheed Report Requires Remand.**

Plaintiff argues that the ALJ did not adequately consider evidence regarding his migraine headaches, and that the ALJ ignored the July 2009 report of Dr. Waqar Waheed which addressed them. The Magistrate Judge found that the ALJ's severity determination regarding Plaintiff's "residuals from traumatic brain injury and subsequent head traumas" sufficiently included Plaintiff's headaches, and that the ALJ demonstrated consideration of Plaintiff's headaches throughout his decision. Without determining whether it was error, and if so whether any error was harmless, the Magistrate Judge concluded that although "[it] is true that the ALJ did not discuss this [2009 Waheed] report in his decision[,]" (Doc. 19 at 8), the ALJ was not required by applicable law to discuss every shred of conflicting medical evidence. The R & R concludes that the 2009 Waheed report is "of little consequence " and "unremarkable" as it "does little more than

6

make a diagnosis of migraine headaches[.]" (Doc. 19 at 8-9.) The R & R cites the ALJ's credibility determination of Plaintiff as further grounds for rejecting the 2009 Waheed report, noting that "the report [is] primarily based on Peatman's subjective self-reporting (AR 464), which the ALJ found to be 'overstated' (AR 12)[.]"

The court agrees with the R & R's conclusion that the ALJ's decision is permeated with references to Plaintiff's residuals from his head traumas which consist primarily of migraine headaches. Indeed, this was Plaintiff's only severe impairment and was thus the focus of the ALJ's subsequent analysis of whether Plaintiff's severe impairment met the listings or the "paragraph B criteria." This same impairment was also the underpinning of the ALJ's RFC determination, his hypothetical to the VE, and was even an essential element of his credibility analysis with regard to Plaintiff. The court thus agrees with the R & R that the ALJ addressed Plaintiff's headaches. The court, however, disagrees with the R & R's further conclusion that, in addressing Plaintiff's headaches, the ALJ was not required to even mention the 2009 Waheed report.

The 2009 Waheed report documents an alleged change in the frequency, duration, nature, and impact of Plaintiff's headaches that is not reflected in the ALJ's decision and is consistent with Plaintiff's testimony before the ALJ. It is therefore not a collateral, irrelevant, dated, cumulative, or stray reference to a nonsevere impairment in an otherwise voluminous medical record. To the contrary, it was a timely piece of medical evidence from a consulting neurologist who conducted a relatively thorough examination that was directly relevant to the impairment for which Plaintiff sought a disability determination. While the ALJ stated he had considered all of the evidence, and while it is true that an ALJ need not explicitly mention every item of evidence in his or her decision, *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983), in this case the failure to even mention the 2009 Waheed report suggests it may have been overlooked.

The court also cannot agree with the R & R's conclusion that the 2009 Waheed report was of "little consequence" or "unremarkable" and did nothing more than diagnose

migraine headaches based upon Plaintiff's self-report.[3] In addition to a thirteen system review medical exam, Dr. Waheed reviewed Plaintiff's chart as well as some of Plaintiff's records from Dartmouth-Hitchcock Medical Center where Plaintiff had an evaluation. Dr. Waheed recorded the following information provided by Plaintiff:

> The patient states that he still continues to have trouble with memory and also trouble with concentration and personality problems. He has been seen by a psychotherapist and is on Wellbutrin and Ambien. He also has trouble with sleep and takes Ambien, as well as Elavil given for headaches.
>
> The other problem is with headaches. The patient states he has a longstanding history of headaches approximately two or three times per month; however, in the past six months, he has been experiencing headaches on an ever[y]day basis. His headaches are typically frontal, right more than left, and sometimes in the hemicranial distribution. They vary from dull to throbbing in nature. There is no aura associated with the headaches. During the headache, he has some nausea, but no vomiting. He does complain of photophobia and phonophobia and worsening of the headache with movement. Only at one point, he had some blurring of vision when he has prolonged headaches. The headaches typically go away if he takes a nap. His headaches get worse with light, sound, and stress. Going to sleep make the headaches better. As mentioned above, he continues to have mood problems. He also has insomnia. He does not drink any significant caffeine. There is a family history of migraine involving his sister.

---

[3] In dismissing the import of the 2009 Waheed report because it primarily reflects Plaintiff's subjective complaints, the R & R does not address whether migraine headaches would be expected to manifest themselves in the form of objective medical evidence discovered in the course of a consultative exam. Certainly, Dr. Waheed did not express any concern that he did not find objective evidence that corroborated the Plaintiff's self-report of headaches, nor did he indicate that he found Plaintiff's symptoms overstated. The R & R's use of the ALJ's credibility determination to bootstrap its rejection of the 2009 Waheed report compounds the error in this case because it is conceivable that the ALJ might have adjusted his credibility determination had he concluded that Plaintiff's testimony was consistent with reports he made approximately a year previously to an examining neurologist. *See* SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996) ("One strong indication of the credibility of [a claimant's] statements is their consistency . . . with other information in the case record[.] . . . Especially important are statements made to treating or examining medical sources."). In addition, the 2009 Waheed report documents the multitude of prescribed and non-prescribed medications Plaintiff has tried to ameliorate his headaches. This undercuts the ALJ's conclusion that Plaintiff's claims were "overstated" because, among other things, "his limited follow through with treatment." (AR 12.)

> He has been taking Elavil 25 mg for the last one or two months. This has helped with his sleep to some extent with migraine; however, he still has significant headaches. He has taken Imitrx, Excedrin, Ibuprofen, Maxalt, and Axert, which were not effective and caused side effects. He has been given a sample of Treximet, which does help with the headaches. Besides amitriptyline, he has been tried on Norvasc, which did not help his headaches.

(AR 464.)

Dr. Waheed concluded that Plaintiff has headaches that were "consistent with migraine without aura with "cormorbidities [that] include[s] sleep disorder and mood disorder." (AR 266). He then proceeded not only to diagnose but to treat Plaintiff's symptoms by: (1) increasing Plaintiff's dosage of Elavil; (2) prescribing Treximet for "abortive therapy;" (3) recommending Plaintiff follow up with his psychiatrist for his mood disorder and continue taking Wellbutrin; (4) ordering "detailed neuropsychological testing" for an objective evaluation of Plaintiff's report of memory impairment; and (5) obtaining "CBC, CMP, B12, folic acid, RPR, and urine tox screen and alcohol." (AR 466.) Dr. Waheed expected Plaintiff to "return to the clinic after these evaluations." *Id.*[4]

Because Dr. Waheed actually examined Plaintiff, the ALJ was required to give greater weight to his opinion to that of a non-examining source. 20 C.F.R. § 404.1527(c)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to a source that has not examined you."). In deciding the appropriate weight, if any, to give the 2009 Waheed report, the ALJ was required to consider "all of

---

[4] In suggesting that Dr. Waheed's report refutes the May 2009 opinion of treating physician Dr. Joseph Theriault (who concluded that Plaintiff could no longer work due to a traumatic brain injury), the R & R erroneously refers to Dr. Waheed as a "treating physician." *See* Doc. 19 at 13-14 ("Moreover, reports from at least one other treating physician (Dr. Waheed) and one consulting psychologist (Dr. Candido), . . . refute Dr. Theraiult's opinion). Although an ongoing physician-patient relationship between Dr. Waheed and Plaintiff was contemplated if not underway, Dr. Waheed appears to have only examined Plaintiff once. In the Second Circuit, a treating physician is the "claimant's . . . own physician, osteopath or psychologist . . . who has or had an ongoing treatment and physician-patient relationship with the patient[.]" *Schisler v. Bowen*, 851 F.2d 43, 47 (2d Cir. 1988). Doctors who see the claimant only once are not generally considered "treating physicians." *See Garcia v. Barnhart*, 2003 WL 68040, at * 5 n.4 (S.D.N.Y. Jan. 7, 2003).

the following factors": (1) the examining relationship between the claimant and the medical source; (2) the treatment relationship, if any, including the length of the treatment and frequency of examination and the nature and extent of the treatment relationship; (3) the degree to which the medical source provides evidentiary support for his or her opinion; (4) the degree to which the opinion is consistent with the record as a whole; and (5) whether the opinion is from a specialist. 20 C.F.R. § 404.1527(d). Here, the court can only speculate as to how the ALJ would apply these factors which, alone, may give rise to a remand if the evidence is of sufficient importance. *See Barreto ex rel. Rivas v. Barnhart*, 2004 WL 1672789, at * 4 (S.D.N.Y. July 27, 2004) (observing that even when an ALJ rejects certain evidence for proper reasons, absent any explanation for doing so, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.") (internal citation omitted); *see also Zblewski v. Scweiker*, 732 F.2d 75, 78-79 (7th Cir. 1984) (remanding even though "there may be strong grounds upon which the ALJ rejected claimant's evidence [because] we cannot say on the basis of the record that such a conclusion is self-evident[,] . . . [i]t is more than merely 'helpful' for the ALJ to articulate reasons (e.g., lack of credibility) for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review."); *Slocum v. Astrue*, 2011 WL 1792581, at *6-7 (D. Vt. May 20, 2011) (ordering remand for proper assessment of an opinion provided by an "other medical source" on the severity of the claimant's symptoms).

Moreover, the court cannot be "confident that the ALJ considered and rejected [the 2009 Waheed report] for reasons that are appropriate under the regulations and evident from the record and the ALJ's findings." *Klodzinski v. Astrue*, 274 Fed. App'x 72, 74 (2d Cir. 2008) (concluding that based upon the record as a whole the treating physician rule was not traversed). Nor is this a case in which the 2009 Waheed report stands in isolation to substantial evidence which supports a conclusion that Plaintiff is not disabled. Plaintiff's self-report and Dr. Waheed's treatment plan are arguably consistent with evidence from Plaintiff's treating physician, Dr. Theriault, whose opinions the ALJ

rejected in a single sentence finding them "unsupported by the record evidence." (AR 13.)

In summary, because the court cannot conclude that the ALJ either actually considered the 2009 Waheeh report or, if he did not, that the outcome would be the same had he done so, remand is required. *Cf. Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (finding harmless error where "we find no reasonable likelihood that her consideration of the same doctor's 2002 report would have changed the ALJ's determination that Petitioner was not disabled during the closed period."). This conclusion is underscored by the pivotal role Plaintiff's headaches played or should have played in every other step of the ALJ's analysis, including his determination of Plaintiff's credibility.

In ordering remand, the court notes two additional errors in the ALJ's decision which should be addressed on remand: the ALJ's hypothetical to the VE and the ALJ's determination of Plaintiff's onset date.

### C. Whether the ALJ's Hypothetical Question to the Vocational Expert Was Adequate.

Plaintiff objects that the hypothetical question posed to the VE regarding Plaintiff's limitations did not account for the "moderate difficulties" that the ALJ had previously found Plaintiff experienced with "concentration, persistence or pace" (AR 10) and also did not include the limitations of "short and long term memory, verbal and written processing, organization, concentration, impulse control, adjusting to new situations, initiating and following through, and tak[ing] longer to do a job" (AR 451, 454) identified by vocational rehabilitation counselor Lindsay Price. Plaintiff further argues that the ALJ's RFC is inconsistent with the omitted information.

With regard to the question posed to the VE, the R & R found "well taken" the argument that it must at least take into consideration all of the limitations found by the ALJ in order to produce a reliable opinion as to whether the claimant can realistically perform a particular job. (Doc. 19 at 18.) The R & R nonetheless recommends that this court find any error harmless because substantial evidence supports the RFC and because

11

the hypothetical accurately portrayed Plaintiff's ailments. The R & R further recommends the court find harmless any inconsistency between the RFC and the omitted information. (Doc. 19 at 19) ("[E]ven if (as Peatman asserts) the ALJ's finding at step three that Peatman was moderately limited in his concentration, persistence, or pace was inconsistent with the ALJ's RFC finding that Peatman could perform jobs requiring an ability 'to understand, remember and carryout moderately complex four to five step tasks which do not involve multi-tasking' (AR 11), the error was harmless."). Finally, the R & R recommends the court find that the ALJ was not required to address Ms. Price's opinions which the R & R characterizes as conflicting with those of other medical providers, without acknowledging that other medical evidence supports her opinions.

The ALJ asked the VE the following hypothetical question[5] about a person with Plaintiff's RFC to determine whether such a person could do Plaintiff's former jobs and whether such a person could do a different job:

> At this point would you for our first hypothetical please assume the Claimant has a residual functional capacity to perform the full range of exertional activities. In terms of concentration, persistence, and pace would you please assume he has the ability to understand, remember, and carry out moderately complex tasks, three, four, five step tasks. However, he would need to do so without really engaging in multi[-]tasking so he'd have to handle one or two tasks at a time but really couldn't do (INAUDIBLE) multi task (INAUDIBLE). In addition, the Claimant would need to be – avoid complex written or verbal communication so by that the instructions themselves might need to be slowed down, or he might have to have one on one, or a conversation when the task is first presented to him. In addition, in terms of social functioning, please assume the Claimant would be able to occasionally deal with co-workers and occasionally deal with the public, at least with the public on a superficial level.

---

[5] The ALJ asked the hypothetical to gather evidence for step five of his analysis, where the evidentiary burden shifted to the Commissioner to show that jobs exist in substantial numbers in the national economy that Plaintiff could do. To meet this burden, there must be a finding supported by substantial evidence that Plaintiff can perform specific jobs despite his limitations. "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays [plaintiff's] individual physical and mental impairments.'" *Varley v. Sec. of Health and Human Serv.*, 820 F.2d 777, 779 (6th Cir. 1987) (quoting *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984).

(AR 60.)

The hypothetical question does not include Plaintiff's moderate difficulties with concentration, persistence or pace. Whether it nonetheless captures the essence of Plaintiff's ailments need not be decided because it depends upon an RFC determination which, itself, may not reflect all of the evidence. Accordingly, upon remand, the ALJ should ensure that any hypothetical to a VE accurately reflects all of Plaintiff's limitations and impairments.

### D.     The Alleged Onset Date.

As the Magistrate Judge observed, the ALJ committed error at step one of his analysis when he found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date in October 2000. This onset date appears to be incorrect because the record clearly establishes earnings between 2004 and 2007. In recommending that the Commissioner's decision be affirmed, the Magistrate Judge found this error harmless because the ALJ concluded that Plaintiff was not disabled. *See Scheck v. Barnhart,* 357 F.3d 697, 701 (7th Cir. 2004) ("The ALJ did not find that Scheck was disabled, and therefore, there was no need to find an onset date."); *Key v. Callahan,* 109 F.3d 270, 274 (6th Cir. 1997) (agreeing that SSR 83-20, which addresses determination of an onset date, "applies only when there has been a finding of disability."); *Temple v. Astrue,* 553 F. Supp. 2d 271, 279 (W.D.N.Y. 2008) (finding that the ALJ was not required to determine an onset date because the ALJ concluded the plaintiff was not disabled at any time).

As the court has remanded the disability determination for further proceedings, in doing so, the court directs the ALJ to reconsider the onset date in light of Plaintiff's revised application[6] and his history of earnings between 2004 and 2007.

### CONCLUSION

For the foregoing reasons, the court declines to adopt the R & R; GRANTS Plaintiff's motion to reverse and remand the Commissioner's decision (Doc. 13);

---

[6] *See* n1.

13

DENIES the Commissioner's motion to affirm the same (Doc. 16) and REMANDS this matter for further consideration consistent with this OPINION and ORDER.
SO ORDERED.

Dated at Rutland, in the District of Vermont, this 16th day of May, 2012.

Christina Reiss, Chief Judge
United States District Court